## Reed *against* Reed.

A testator having devised all his real estate, charged with the payment of an annuity to his widow and several legacies to his brothers and sisters: *Held*, that upon a sale of the estate by the sheriff, and a deficiency of the proceeds to pay all the legacies charged upon it, the annuity of the widow shall not abate with the other bequests.

In Pennsylvania, every bequest to the wife is conditional by force of the statute, which declares that every legacy to her shall be in lieu of dower if the contrary be not expressed; and thus standing as if a surrender of her dower had been expressly prescribed by the testator, she is not a volunteer, but a purchaser.

ERROR to the common pleas of *Mifflin* county.

Jane Reed against Abner Reed and others. Alexander Reed, by his last will and testament, thus disposes of his estate:

" 1. I will that all of my debts and funeral expenses be paid by my executors hereinafter named and appointed.

" 2. I give and bequeath to my wife Jane the ten shares of stock which I hold in the Juniata Bank, of Pennsylvania, during her natural life. She to receive the interest as it may become due during that time, and the stock at her decease to return to my estate.

" 3. I give and bequeath to my brothers, John and Abner Reed, the ten shares of stock which I hold in the Centre Bank, of Pennsylvania, subject to any instalments which may be paid at the time of my decease.

" 4. I give and bequeath to my niece, Mary Steely, daughter to my sister Sarah, one bed and bedding—my wife to have the first choice of all my beds and my said niece the second choice.

" 5. I give and bequeath to my beloved wife Jane the one half of all the rest and residue of my personal and moveable estate. In this bequest is to be included the price of the bed and bedding of which she is to have the first choice before mentioned.

" 6. I give and devise to my brothers, Abner Reed and John Reed,

and to their heirs and assigns, as tenants in common, all and singular my lands and tenements with the appurtenances, they paying equally thereout the following sums to wit:

" 1. To my wife Jane the sum of 130 dollars yearly and every year during her natural life.

" 2. To my brother Andrew Reed the sum of 2400 dollars to be paid him as follows, to wit: 1000 dollars at the time of my decease; 500 dollars at the expiration of three years after my decease; 200 dollars at the expiration of five years after my decease, and the sum of 700 dollars at the decease of my wife, Jane.

" 3. To my brother Thomas Reed 1333 dollars and 33 cents, as follows, to wit: 266 dollars and 67 cents one year after my decease; 266 dollars and 66 cents two years after my decease; 266 dollars and 67 cents four years after my decease, and 533 dollars and 33 cents at the death of my wife Jane.

" 4. To my sister, Sarah Steely, the sum of 133 dollars and 33 cents, as follows, to wit: 50 dollars in one year after my decease; one half of the residue in three years after my decease, and the residue in six years after my decease.

" 5. To my sister Mary, wife of John Thompson, the sum of 666 dollars and 67 cents, as follows, to wit: 266 dollars and 67 cents at my decease; 266 dollars and 66 cents three years after my decease, and 133 dollars and 33 cents five years after my decease.

" 6. To my sister Jane the sum of 800 dollars, whenever she may call on them for the same, which said several sums I bequeath to my said wife, brothers, and sisters, to be paid as aforementioned by my said brothers Abner and John Reed, out of the land and personal property herein devised and bequeathed to them.

" 7. I will, devise, and bequeath to my brothers John and Abner Reed, all the other half of my personal and moveable property, and all the rest and residue of my real and personal property, to them, their heirs and assigns forever.

" 8. I will, devise, bequeath, and direct, that in case any of the legatees or devisees herein before mentioned, should die in my life time, or before they receive their respective legacies and devises, the same shall go, be vested, and descend according to the last will and testament of such devisee or legatee, or according to the law of the land, in the same manner as if they had survived me and received their legacies and devises in their lifetimes respectively.

" 9. I nominate and appoint my brother Abner Reed and my friend Samuel W. Taylor, of Union township, Mifflin county, executors of this my last will and testament, hereby revoking all others."

The devisees, John and Abner Reed, were sued by the widow and other legatees, for the annuity, as it became due, and their respective legacies; judgments were obtained, the land levied and sold, and the proceeds, 4050 dollars, brought into court for appropriation; and the question arose, whether the amount due to the widow at the time of the sheriff's sale, and the legacies to the other lega-

[Reed v. Reed.]

tees, should abate rateably, or whether the widow was not entitled to the whole amount due her. The court below was of opinion that the widow was entitled to no preference, and that all the legacies should abate alike.

This was the subject of the error assigned.

*Benedict* and *Reed*, for plaintiff in error, cited 1 *P. Wms.* 127; 2 *Ves.* 417; 18 *Law Lib.* 374; 17 *Serg. & Rawle* 171; 8 *Serg. & Rawle* 279; 3 *Penn. Rep.* 384; 4 *Watts* 397; 4 *Whart.* 221.

*Hale* and *Wilson, contra,* cited 3 *Atk.* 693; 4 *Vern.* 31; 1 *Roper* 286; 2 *Ves.* 414; *Purd. Dig.* 565; Act of 1772, sect. 7; 1 *Roper* 421.

The opinion of the court was delivered by

GIBSON, C. J.—If this legacy is specific, as I take it to be, not being payable at all events, but out of a particular fund, and not by the executor, so also are the other bequests of gross sums out of the same fund; but as specific legacies abate as to each other, the question stands as if it were between general legatees.

The expressions with which the opinion of the court was introduced in Duncan *v.* Alt, and which have been pressed into the argument here, were intended to mark the leading principles on which foreign courts of equity have proceeded betwixt those who stood in the same degree of consanguinity; for in that case the question lay between children, and no widow was involved in it, either as a purchaser or a beneficiary. In this, the widow is the principal party; and she stands on higher ground than she would stand, by the same terms of bequest, in England. Viewing the annuity merely as a gratuity, a chancellor might perhaps think the testator had sufficiently discharged his duty to provide for her by giving her the bank stock and a third of the personal estate; but what would he think, were the bequest of the whole coupled with a condition that it be accepted as an equivalent for her dower, not only in the land on which it is charged, but in all his lands beside. In Burridge *v.* Bradyl, 1 *P. Wms.* 127, Lord Cowper preferred a widow's legacy given expressly on that condition; and in Blower *v.* Morret, 2 *Ves.* 420, Lord Hardwicke did the same, as also did Lord Gifford, when master of the rolls, in Heath *v.* Dendy, 1 *Russell* 543. And in Davenhill *v.* Fletcher, *Amb.* 420, it-was very properly ruled that the preference may be enforced, though the legacy exceed the value of the dower, because, as a purchaser of it, the testator is the best judge of that. In these cases the court proceeded on the ground that the relinquishment of the widow's right at law entitles her to the entire benefit of her legacy, in exclusion of every one else. Such is distinctly the English rule in cases of expressly conditional bequests. In Pennsylvania, every bequest to the wife is conditional by force of the statute, which declares that every legacy to her shall

IX.—X*

[Reed v. Reed.]

be in lieu of dower, if the contrary be not expressed; and thus standing as if a surrender of her dower had been expressly prescribed by the testator, she is not a volunteer, but a purchaser—a feature which is decisive of the cause. As a general rule, it may be said that equality of distribution prevails among volunteers; but children, and a wife, though she may have relinquished nothing, are looked upon, in comparison with collaterals and strangers, rather as creditors, for whom a testator is bound to provide by the ties of parental and marital duty. They are called creditors in Uvedale *v* Halfpenny, 2 *P. Wms.* 152; Rigden *v.* Valier, 2 *Ves.* 258; and Scott *v.* Scott, 2 *Eden* 461; and so far was their right to that character carried in Bells *v.* Bells, 2 *Finch Ch.* 88, that under a trust to raise portions and maintenance for children, and money to pay debts, the maintenance was decreed in preference to the debts. Thus we see that even children destitute of other provision, though they are volunteers as regards each other, are to be preferred to collaterals, because there is nothing in the case to rebut the presumption of a natural intent to provide for them in preference to the more remote kindred. But the duty of provision having been satisfied in the testator's lifetime, a further provision by will is a gratuity; and a wife or child stands, in regard to that, on a level with any other legatee. Between a child and any one but a purchaser, therefore, the question of provision may be an important one; but a widow who relinquished her dower by claiming her husband's testamentary gift, as he must if he was seised of an estate of inheritance, stands on an equity which is superior even to that of a destitute child; and being entitled to preference over children, she is necessarily entitled to it over brothers and sisters.

Judgment reversed, and a *venire de novo* awarded.