| Reed *against* Reed.

On a sheriff's sale of land, all liens on the land, due at the time of the sale, where they may be reduced to a certainty as to amount, are entitled to payment out of the proceeds: hence the arrears of a widow's annuity, which are due and payable, must be paid out of the proceeds of sale.

In an action against a sheriff to recover the amount of a lien upon land sold by him, where it appeared the sheriff had paid over the money to other lien creditors, and taken their refunding receipts, the plaintiff is as well entitled to recover interest as principal.

. In an action by a widow against a sheriff to recover the arrears of an annuity, which was due and payable out of land sold by him on an execution, the defendant cannot set up as a defence or set-off that the plaintiff had received out of another fund of her husband's estate more than she was entitled to.

THIS was a writ of error to the Court of Common Pleas of *Mifflin* county, where judgment was rendered in favour of the commonwealth for Jane Reed against Abner Reed, James Thompson, James Milliken, and Joseph Milliken who survived Foster Milliken, in an action of debt on the recognizance of Foster Milliken, late sheriff of Mifflin county, and the defendants, for the faithful performance of his duties as sheriff.

The plaintiff claimed the amount, with interest, due upon a legacy given to her by the will of her late husband, Alexander Reed, from the moneys coming into the hands of the sheriff on a sale of the land of the testator by execution.

The bequests in the will of Alexander Reed were as follows:

Item 2. I give and bequeath to my wife Jane the ten shares of stock which I hold in the Juniata Bank of Pennsylvania during her natural life; she to receive the interest as it may become due during that time, and the stock, at her death, to return to my estate.

Item 3. Gives to Abner and John Reed his ten shares of stock in the Centre Bank, they to pay any instalments then due.

Item 4. Gives to his sister Mary a bed and bedding — his wife to have the first choice of a bed and bedding.

Item 5. I give and bequeath to my beloved wife Jane the one-half of all the rest and residue of my personal and moveable estate: in this bequest is to be included the price of the bed and bedding of which she is to have the first choice.

Item 6. I give and devise to my brothers, Abner and John Reed, and their heirs and assigns, as tenants-in-common, all and singular my lands and tenements, with the appurtenances, they paying equally thereout the following, to wit:

[Reed v. Reed.]

1. To my wife Jane, the sum of $130 yearly and every year during her natural life.

2. To my brother, Andrew Reed, the sum of $2400, to be paid him as follows, to wit: $1000 at the time of my decease; $500 at the expiration of three years after my decease; $200 at the expiration of five years after my decease; and the sum of $700 at the decease of my wife Jane.

3. To my brother Thomas Reed $1333, as follows, to wit: $266.67 one year after my decease; $266.67 two years after my decease; $266.67 four years after my decease; and $533.33 at the death of my wife Jane.

4. To my sister Sarah Heely the sum of $133.33, as follows, to wit: $50 in one year after my decease, and the residue in six years after my decease.

5. To my sister Mary, wife of John Thompson, the sum of $666.67, as follows, to wit: $266.67 at my decease; $266 three years after my decease; and $133.33 five years after my decease.

6. To my sister Jane the sum of $800 whenever she shall call upon them for the same.

Which said several sums I bequeath to my said wife, brothers, and sisters, to be paid as aforementioned by my brothers Abner and John, out of the land and personal property devised and bequeathed to them.

Item 7. I will, devise, and bequeath to my brothers, John and Abner Reed, all the other half of my personal and moveable property, and all the rest and residue of my real and personal property to them, their heirs, and assigns for ever.

Item 8. I will, devise, bequeath, and direct, that in case any of the legatees, or devisees, hereinbefore mentioned, should die in my lifetime, or before they receive their respective legacies and devises, the same shall go, and be vested, and descend according to the last will and testament of such legatee or devisee, or according to the law of the land, in the same manner as if they had survived me and received their legacies and devises in their lifetimes, respectively.

Item 9. Appoints Abner Reed and S. W. Taylor executors.

To April Term, 1829, a suit was brought by Andrew Reed against Abner Reed, with notice to Abner Reed and S. W. Taylor, executors of Alexander Reed, deceased; and on the 21st of January 1829, judgment rendered for plaintiff for $2746.82, to be made out of the land. A *fi. fa.*, issued to November Term, 1829, which was levied on land, and inquisition held and property condemned. On a *venditioni exponas* it was sold for $4050 on the 15th of March 1830, and the sheriff executed and acknowledged his deed for one-third of 350 acres of land, the property of Alexander Reed, deceased, subject to the widow's annuity. Of this

[Reed v. Reed.]

money the plaintiff claimed the arrears of her annuity, due at the time of the sheriff's sale, with interest on the same from the time they respectively became due, and also from the time of sale.

It appeared that the widow had brought suit against the executors and terre-tenants, from time to time, to recover her arrears. On one of these, brought to August Term, 1825, she recovered judgment, on the 8th of November 1828, for the amount due to her to the 21st of November 1824, with interest, amounting to $1438.72. On this judgment a *fieri facias* was taken out, in 1829, and levied on real estate, and inquisition was held and the land condemned. Another suit was brought to January 1827, and others to January 1829 and January 1831, not proceeded in; several payments being made.

The plaintiff called a witness, who proved a demand on behalf of the plaintiff, and refusal of payment; but the time was not specified.

The defendants offered to prove that the widow had received the money from the bank for the stock, the interest only of which was bequeathed to her; thereby converting the stock into money, contrary to the will, for which she is chargeable. This was done on the 6th of January 1838. This offer being objected to, the court rejected and sealed a bill of exceptions.

The court charged as follows:

BURNSIDE, President.—This cause was before us on a former occasion, and taken to the Supreme Court and reversed. With the lights and authorities we then had, we held that all the legacies chargeable on the same land should abate *pro rata*. In this it would seem we erred, and the Supreme Court held the law to be that as the widow takes the legacy in lieu of dower, she is a purchaser, and takes her bequest without any abatement. This decision of the cause does not satisfy the defendant, and he asks us to instruct you,—1st, That the plaintiff in this cause, by bringing suit for her legacy, due since the sheriff's sale, has elected to treat the land sold as subject to her legacy in the hands of the purchaser at the sheriff's sale, and she therefore has no right to receive any part of the fund at such sale; and 2d, That if the widow claims and receives the amount due her out of the sheriff's sale, under the will out of the fund raised at such sale, she therefore elects to treat the sale as devesting her of her lien, under the will of Alexander Reed, upon the land sold, as she cannot resort to both; and if she receives her money out of the fund raised at sheriff's sale, the purchaser holds the land discharged of her lien; and lastly, that the plaintiff has no right to recover in this suit.

The plaintiff's counsel request us to instruct otherwise.

You will observe from the evidence, that there is no lien or incumbrance shown on the estate of Alexander Reed in his lifetime; that the land was sold on a judgment against the executors for

one of the legacies charged upon it; and that the sheriff's administrator took refunding receipts for all the money paid. We treat it as if it was here in court for distribution. Under the decision of the Supreme Court in this very case, the widow was to be the first paid, and that without any deduction; all the other legatees were to abate—they are entitled to the balance. We instruct you that she is entitled to recover; and as the sheriff either used the money, or took refunding receipts which must pay interest, that she is entitled to interest. It is not necessary to decide further; but it is our opinion that the purchaser at sheriff's sale took the estate subject to her legacy, which was given in lieu of dower, and that it remains a charge on the land for all payments becoming due after the sale. The first payment of $130 will be due one year after the sale; and no interest is to be charged until the lapse of one year after the death of Alexander Reed.

To this opinion of the court the defendant's counsel excepted.

Errors assigned:

1. The court erred in overruling the objections to the admission of the will in evidence as contained in the first bill of exceptions.

2. The court erred in rejecting the testimony as contained in defendant's second bill of exceptions.

3. The court erred in their charge, by instructing the jury, 1st, that the plaintiff was entitled to recover. 2d, that as the sheriff either used the money, or took refunding receipts that must pay interest, that she (the plaintiff) was entitled to interest; and 3d, that it was not necessary to decide further, but that it was the opinion of the court, that the purchaser at sheriff's sale took the estate subject to her (the plaintiff's) legacy, which was given in lieu of dower; and that it remains a charge on the land for all payments becoming due after the sale.

*Hale* and *Valentine*, for plaintiff in error, contended that the widow's interest was not affected by the sale, but the land in the hands of the purchaser remained subject to her claim, as well that which was due at the time of the sale, as that which would become payable after the sale. There can be no difference between that which is *debitum in presenti*, and that which is *solvendum in futuro*. The lien or charge on the land is an unit, and is either payable out of the proceeds of sale, or it is not; it cannot be payable out of the proceeds of sale in part, and chargeable upon the lands in the hands of the purchaser in part. We think the whole is chargeable upon the lands. 4 *Watts* 397; 2 *Watts* 283; 3 *Penn. Rep.* 368; 1 *Watts* 261. On the subject of interest, they cited 17 *Serg. & Rawle* 390.

*Parker* and *Benedict*, for defendants in error, on the first point contended that the arrears of the annuity, due at the time of the

[Reed v. Reed.]

sheriff's sale, was payable out of the proceeds, and cited 4 *Rawle* 487.

On the subject of interest, they relied upon 2 *Watts* 200; 9 *Watts* 530.

The opinion of the Court was delivered by

SERGEANT, J.—The questions that have been discussed in the argument here, are three : 1st, whether the plaintiff is entitled to be paid the arrears of her annuity, due at the time of the sheriff's sale; 2d, whether she is entitled to interest, and how much; 3d, whether the set-off was admissible.

1. On a sheriff's sale of land, it is settled that all liens on the land, due at the time of the sale, when they are capable of being reduced to a certainty, are entitled to payment out of the proceeds. It was long ago decided in *Bantleon* v. *Smith* (2 *Binn.* 146) that arrears of ground-rent, due at the time of the sheriff's sale, are payable out of the moneys raised by the sale. There is no distinction in this respect between a legacy charged on the land and other liens. The only reason why the future arrears of annuity, payable out of the land to the widow, have been excepted, is on account of the impossibility of computing their amount. Therefore, as to them, the purchaser has been held to take the land, chargeable with the future payments. But this reason does not apply to arrears due and payable. They are a fixed and certain debt, capable of exact computation, and therefore entitled to be discharged. The purchaser takes the land free and acquitted of them.

2. The court was certainly right in saying, that as the sheriff either used the money, or took refunding receipts which must pay interest, the plaintiff was entitled to recover. This is the rule as to all trustees, executors, and other officers. To avoid the payment of interest, it must appear that the money was held in their hands, neither drawing interest, nor employed by themselves, unless there are particular circumstances to take the case out of the general rule of law. As to the interest prior to the sheriff's sale, though that has been relied on here by the plaintiffs in error, I perceive nothing of it in the charge of the court. That the plaintiff, however, in a case like the present, is entitled to interest from the time each year's sum is payable, was decided in *Addams* v. *Heffernan* (9 *Watts* 530) which is not to be distinguished from the case before us; and may also be collected from *Reed* v. *Reed* (9 *Watts* 263) when this case was before the court on a former hearing.

3. As to the bank stock, the widow's receipt of the money was not a subject of set-off. She was exclusively entitled to the interest of it during her life; and if she, owing to the embarrassed situation of the Juniata Bank, procured the money from them, like other stockholders, it would be for her executors to account for

[Reed v. Reed.]

the proceeds bequeathed over, after her decease, to those then en-
titled.    No other person had so good a right to receive it, if pay-
ment became necessary, as it is stated it did.

On the whole, we perceive no error in the charge of the court,
or in relation to the evidence.

Judgment affirmed.