## Spangler's Estate.

Where the corpus of a legacy is interest accruing on a residue after payment of debts, and not the residue itself, unless a contrary intent is collectable from the tenor of the will, the legatee is entitled to all that is made from the death of the testator.

APPEAL from the decree of the Orphans' Court of *York* county.

The questions which presented themselves in this case arose out of the construction of the will and settlement of the estate of Jacob Spangler, deceased.   The material parts of the will are as follows : —

*Item*, it is my will, and I order and direct that my plantation and tract of land, situate part in Spring Garden township, and part in the borough of York, in the county of York and state of Pennsylvania, whereon Daniel Gotwalt now lives, adjoining lands of Henry Smyser, Dr Luke Rouse, Joseph Small, the heirs of George Kuntz, deceased, lands of Thomas Baumgardner, my other lands, lands of Christian Hildebrand, Benjamin Weiser and others, &c., containing about 142 acres, more or less, shall be laid out in small lots so as to suit purchasers, and sold at public sale for the highest and best price that can be gotten for the same, at a time when most suitable and convenient after my decease.   This whole tract of land, with the appurtenances, I order shall be sold to purchasers for cash, clear of incumbrances, and free from any dower fund ; and I do hereby empower my executors hereafter named, or the survivor or survivors of them, to make good deed or deeds for the same, as good as if I were personally present.   *Item*, I further give and bequeath unto my son, Jacob Rudolph Spangler, my gold watch, as a specific legacy.   *Item*, I also give and bequeath to my only son, Jacob Rudolph Spangler, and to his heirs

[Spangler's Estate.]

and assigns for ever, my plantation and tract of land situate in Spring Garden township, in the county of York aforesaid, whereon John Waggoner now lives, adjoining my other lands, lands of Thomas Baumgardner, lands of widow Irwin, lands of Michael Shellenberger, lands of Charles Nes, the Peachbottom road, &c., containing about 180 acres, be the same more or less, which I value at $9000. Should he, however, when he shall arrive at full age, judge that sum more than the value of said farm, then, in that case, I order that the Orphans' Court of said county appoint five disinterested men to value the same on their oath or affirmation, whose report shall be final, and my son Jacob shall account in the distribution of my estate for the same as follows, viz: two-thirds thereof at the first distribution equally amongst all my children by my executors, and the remaining one-third I order and direct he shall pay the interest annually to his mother during her life or widowhood, and at her death to pay or account for the principal of the said third or dower fund with my executors in the final distribution of my estate amongst my heirs or legatees.

*Item*, I further will and direct that in case my son Jacob should die before he arrives at lawful age, then and in such case the said plantation and tract of land shall be sold at public sale by my executors, or the survivor or survivors of them, and the proceeds of such sale be equally divided amongst my surviving heirs, share and share alike, as I shall hereafter direct, my wife's dower fund to remain a lien on the said premises during her life, and the interest to be paid her annually, as directed in case my son Jacob accepting said farm; but should my son Jacob, when he arrives at full age, not be willing to accept the said farm, then I order and direct my executors to sell the same at public sale as within mentioned, my wife to have the interest of one-third of the proceeds of such sale during life or widowhood. I further order and direct that all the rest, residue and remaining part of my real and personal estate not hereinbefore willed and disposed of, situate either in the borough of York or in the county of York, including all that situate in Harrisburg, in the county of Dauphin, or elsewhere in Pennsylvania, including my chestnut land in York county, shall be sold (in small lots) by my executors, or the survivors of them, at public sale, who shall make good deeds or titles for the same to the purchasers thereof.

*Item*, I further order and direct that my executors shall sell all my stocks, bank and road stocks, and the proceeds thereof shall be collected, including all moneys due me on book accounts, bonds, notes, judgments, mortgages and other evidences of debt, and one total sum made thereof, after deducting the necessary expenses incident to settling my estate; the balance then remaining upon my executors' account shall by them be divided as follows, viz: my wife Catherine shall have the interest of the dower fund, or third part of the whole; the real estate, when sold, shall be sub-

[Spangler's Estate.]

ject to my wife's dower fund, which shall be a lien on the same, except the land which is to be sold in lots to be free of the dower fund, as mentioned in the within parts of my will, which said interest shall be paid my said wife annually during her natural life or widowhood, which said dower fund shall be vested out on good real estate, and the other two-thirds of all my real and personal estate shall be equally divided amongst all of my children, share and share alike, my son Jacob to account for the two-thirds of the valuation of his land, as hereinbefore mentioned, provided he accepts it.

*Item*, my will is, and I do further order and direct that after the death or intermarriage of my said wife Catharine, the house and lot of ground that she may hold by virtue of this my will at that time shall, as soon as convenient, be sold at public sale, together with all the furniture and personal estate then left, as herein willed to her, by my executors, or the survivors or survivor of them, and all dower funds shall be collected, and the whole amount of moneys arising out of the same, after final settlement made with the Orphans' Court, the balance shall then be equally distributed and divided amongst all my children, share and share alike; but if any of them should be dead at that time, having left issue, their children shall inherit their parent's share; but if any of them should have died without issue, then their shares shall be equally divided amongst the surviving brother and sisters, my son Jacob to account for the dower fund charged upon his farm, provided he accepts it.

*Item*, I further give and bequeath to Catharine M'Clean, my wife's niece, the sum of $200, as a specific legacy, and to be in full for any services rendered to me or my family since she became of lawful age; and I further order and direct that the one equal half part of the share of all my estate so as aforesaid willed to my daughter Margaret shall be put at interest by my executors in real security, such security to be double in value to the money loaned thereon, during the life of my said daughter, the interest of which shall be annually paid to her so long as she remains single, and if she marries, the said interest shall be employed in her support and maintenance, and is to be paid to her, to be by her disbursed for that purpose, and over which her husband is to have no control; and after her death the principal of said half share shall be equally divided amongst her children; and if she dies without children, then the same shall be divided equally amongst my other children; the other half or residue of my said daughter Margaret's share shall be paid her agreeably to the first distribution mentioned in this my will. The one equal half part of the share of all my estate so as aforesaid willed to my daughter Jane shall be put at interest on real security, as aforesaid, during the lifetime of my said daughter Jane, the interest of which shall be annually paid to her so long as she remains single; and if she

[Spangler's Estate.]

marries, the interest of her said half share shall be employed in her support and maintenance, and is to be paid to her, to be by her disbursed for that purpose, and over which her husband is to have no control; and after her death the principal of said half share shall be equally divided amongst her children; and if she dies without children, then the same shall be equally divided amongst my other children; and the other half of my said daughter's share shall be paid her agreeably to the first distribution mentioned in this my will. The one equal half part of the share of all my estate so as aforesaid given to my daughter Susan shall be put at interest on real security as aforesaid during the lifetime of my said daughter Susan, the interest of which shall be annually paid to her so long as she remains single; and if she marries, the interest of her said half share shall be employed in her support and maintenance, and is to be paid to her to be disbursed for that purpose, and over which her husband shall have no control; and after her death the principal of said half share shall be equally divided amongst her children; and if she dies without children, then the said half share shall be equally divided amongst my other children; and the other half of my said daughter Susan's share shall be paid her agreeably to the first distribution in my will. If any one of my daughters are under age at the time of my death, my wife Catharine shall receive the interest coming to such daughter until she arrives at age, and employ such interest in the support and education of such daughter. And I do further direct, that in case the purchase of a house and piece of ground for any of my three last named daughters, after their marriage, should be deemed by my executors as required by their circumstances, my executors, or the survivor of them, are authorized, at the request of such daughter, to make such purchase out of the principal of the half share willed to such daughter during life, the deed therefor to be taken in the names of the executors making the purchase in trust for such daughter and her heirs, and to be expressed so in the deed that is for her separate use. Provided my wife is living, such purchase must previously receive her approbation; and provided further, that in case there should be any difference of opinion amongst my executors touching the execution of this will, my wife shall be consulted, and her decision in relation to the said difference shall prevail; and provided, also, that my said daughters, Margaret, Jane and Susan, after arriving at full age, shall respectively have power to dispose of the principal of their respective half shares of my whole estate by this will given during life, which said disposition by will shall only take effect on the daughters making it dying without issue, and the principle of law which prevents a married woman from making a will shall not apply in such case.

The court below referred the settlement of the account to an auditor, who thus stated and disposed of the several questions:

That in making such distribution several questions arose, depending upon the construction of the testator's will, affecting the distribution which it was necessary to decide; and in making the examinations the parties were heard by their counsel, and their views were submitted to the auditor. One principal question was, whether the testator's widow (she having accepted the provisions of the will in lieu of dower) is entitled to the interest, rents and profits arising on the third allotted for her use, during the first year after the testator's death; or whether the same interest, rents and profits are to be added to the third of the principal, and she to have the interest on the aggregate at the end of the second year. The opinion of the auditor is, that the said widow is entitled to receive the one-third of the interest, dividends, rents and profits actually derived from the one-third of the whole estate, real and personal, at the end of the first year from the testator's death.

The testator, although possessed of a large estate, provides no fund in express terms for the support of his widow during the first year after his decease. She has a house and furniture provided, but nothing further, nothing expressly for maintenance; and to suppose that the testator intended she should be destitute of support until the end of the second year would be an unnatural conclusion, and at variance with his known kindness and concern for his family; and even if not distinctly expressed, the intention of the testator would be presumed to be in accordance with the construction of the auditor in such a case. It is now well settled by the decisions of the Courts of Chancery in England, as well as of our own courts, that where an annuity or annual provision is given by will, and no intention expressed to the contrary, the legatees shall have the interest from the death of the testator. See 2 *Roper on Legacies,* (2d *London Edition* 172); 5 *Binn.* 475; *Hilyard's Estate,* (5 *Watts & Serg.* 30). In the cases in Binney and Watts and Sergeant, the annuity is described as the interest or profits arising from time to time during the year from the corpus or principal fund, and payable annually; and in the will of Mr Spangler, referring to the interest of the third given to his wife, he says, " which said interest shall be paid my said wife annually during life or widowhood." These are the terms used in the case in 5 *Binn.*, upon which the case was decided as showing not merely a presumed but an expressed intention that the legatee should have the interest accruing the first year. But it is also a rule in Chancery that when a legacy in gross is given payable at a future day in favour of a child having no maintenance provided, it shall carry interest to the child from the testator's death; and the rule is said to be the same in case of a widow, unprovided with support. See 2d *Roper* 180–186. Upon the reason of the thing, as well as the authorities, your auditor therefore concludes that the actual interest, dividends, rents and profits received or

[Spangler's Estate.]

accruing in the first year after the testator's death, are due to the widow as at the end of that time; and it appears further, that the situation of the funds of Mr Spangler's estate was similar to that in *Hilyard's Estate* above cited, and *Hewitt's* there cited, and which appear to be conclusive authorities. That the rents and profits of real estate ordered to be sold are to follow the same rule as the interest on personal funds appears as well from the reason of the case as the express authorities. The rule is fully stated in 2d P. Wms. 26–7, and is, that where legacies are charged or to be raised out of real estate, which bears profits, the legatee shall have the previously accruing interest equal to the profits, just as in the case of mortgages and stocks bearing interest. Another reason may be added; the testator directs his real estate to be sold. This direction converts the whole into personalty, as at his death, and from that time all rights of legatees are considered as vested for their benefit, just as in the case of personal estate uncollected or unconverted.

Another question arises connected with this distribution as regards a devise by the testator to his son Jacob of the Wagner farm. Your auditor is of opinion that the devise is an immediate devise in fee with defeasances or rather executory devises over on certain events; which are the refusal or death of the devisee at certain times. The law on this subject is stated in the case of *Shepperd* v. *Ingram*, (*Ambler* 450). It is that " where real estate is devised with a clause of defeasance on a future event, the devisee is entitled to the rents and profits until the contingency happens." It is also a general rule that where real estate is devised, unless otherwise directed, the devisee takes it at the testator's death with all subsequent profits. The opinion of the auditor therefore is as to the Wagner farm, that Jacob R. Spangler was entitled to all the profits from the testator's death, and that they did not belong to the general fund, and the executor as executor was not chargeable with them, but is to account for them to the devisee, (he having as is alleged agreed to the first terms stated in the will). In regard to the widow's claim from the Wagner farm, that is considered a matter between her and Jacob, and does not enter into the auditor's decision, although her rights in that respect will, it is believed, be governed by the foregoing principles as to the first year's profits.

Another question arises in the distribution in regard to the shares of the two minor daughters, Jane and Susan, out of the first year's interest, rents and profits. By the will the widow has the charge of their support and education, and is to receive the interest on their funds. This in effect constitutes her the testamentary guardian of these minors, and she is of course entitled to their shares of the interest, rents and profits for the first year under the principles and authorities before stated.

According to the foregoing views, the auditor reports a distri-

bution account of the estate charged on the separate account of Charles Weiser, one of the executors, confirmed by the court.

To which report the following exceptions were filed:

1. The auditor erred in giving to Jacob R. Spangler the net produce of the Wagner farm.

2. Also in not including the net produce of the Wagner farm in the distribution among all the legatees.

3. Also in giving the widow absolutely one-third of the net produce of the real estate, including the Wagner farm, and the one-third of the increase of the personal property realized during the first year after the testator's death; and in not including said one-third of produce and increase in the fund, one-third of which according to the will is to be vested for the widow.

4. Also in giving to Mrs Roberts, Jane and Susan, absolutely, the whole of their share of the increase of the real and personal estate realized during the first year after the testator's death.

5. Also in deciding that the sum of $6654, in Charles Weiser's account, and $496.54 in the account of H. Alrick's, should be funded for Jane and Susan Spangler respectively, being their whole shares.

The court below overruled the exceptions and confirmed the report of the auditor. The same questions were argued in this court by

*Campbell* and *Fisher*, for appellants.
*Mayer* and *Evans*, for appellees.

The opinion of the Court was delivered by

Gibson, C. J. — The widow would not be entitled to interest from the death on the ground that no provision was made for her immediate support, for she was amply provided for; and it is besides entirely settled by the later decisions that a wife does not stand, as to that, on the footing of a child. She may, in one sense, be said to be a purchaser of a legacy in lieu of dower, inasmuch as it is not entirely gratuitous; but that regards not a question like the present. It is a circumstance of decisive importance in a question of abatement between her and collaterals or perhaps children; as was held in *Reed* v. *Reed*, (9 *Watts* 263), and in many cases there quoted. But where the corpus of a legacy is interest accruing on a residue after payment of debts, and not the residue itself, it is well settled that unless a contrary intent is collectible from the tenor of the will, the legatee is entitled to all that is made from the death of the testator for the palpable reason that less would otherwise be got than was given. On the other hand, where nothing is accruing, nothing is given in the mean time; and the bequest begins to operate actively only when the fund begins to be productive; and this, in either case, without relation to the rule for the commencement of interest on a pecuniary bequest of

[Spangler's Estate.]

principal and not interest.   Here the corpus of the bequest is interest itself; but how much of the widow's third made interest from the death, or any later period, does not appear.   Part of it, consisting of her proportion of the stocks, bonds, notes, judgments, mortgages and simple contract debts, must have been immediately productive, and so far she was certainly entitled; but for all besides, she is entitled from the time when interest was, or ought to have been made.   The auditor proceeded on the right principle, but there is reason to think he has given it too wide a sweep.   The matter is therefore referred back to him to allow the widow whatever interest, specifically so called, accrued from the time of the death or any subsequent period; and the residue of the report stands affirmed in the mean time.

Referred accordingly