## ESTATE OF H. C. FLICKWIR, DECEASED.

### APPEAL BY C. W. JORDAN ET AL. FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued March 31, 1890—Decided October 6, 1890.

[To be reported.]

1. The rule that interest upon legacies does not commence to accrue until one year after the death of the testator, being one of administrative convenience only, gives way at all times to the testator's intent, whether express, or whether implied from the general scheme of the will, from particular expressions, or from the situation of the legatee, especially with reference to the testator.

2. There is no substantial difference, in legal aspect, between the gift of an annuity for life, and one of the interest or income of a fund for life; nor between the gift simply of interest, and that of interest payable annually: in all these cases, if no actual intent to the contrary appear, the annuity, interest, or income commences to accrue to the legatee at the death of the testator.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 133 January Term 1890, Sup. Ct.; court below, number and term not given.

On May 28, 1888, Hannah C. Flickwir died, leaving a will,

duly admitted to probate, giving to various individuals, some of whom were described as collateral relatives either of the testatrix or of her deceased husband, devises of real estate and pecuniary legacies; to her executors, upon certain trusts, pecuniary legacies aggregating $60,000; to various religious and charitable organizations legacies aggregating $130,000, and to Clara W. Jordan, Sophia Beebe, Thomas W. Sparks and Anna M. Sparks, children of a deceased nephew of the testatrix, the residue of her estate. Harry F. West and Thomas W. Sparks were appointed executors. The will, in item 56, declared that no legacy or devise should abate by reason of the death of a legatee or devisee in the lifetime of the testatrix, but that, in such event, the persons who would be the representatives or distributees of the deceased legatee or devisee, should succeed thereto; that all collateral inheritance tax should be paid out of the residuary estate, and that, in the event of a deficiency of assets, the legacies given to individuals should be paid in full, in preference to those given for public or charitable uses.

The legacies given to the executors, in trust, were bequeathed by items 4, 14, 15, 21, 38, 40 and 45 of the will. In each case the trusts declared were to pay the interest and income of the bequest to a certain person for life, and at his decease to pay the principal to his children or other relatives. Some of the beneficiaries for life were described in the will as collateral relatives of the testatrix or her husband. In two instances, a separate use for the benefit of the beneficiary for life, was created. Exclusive of such provisions, the bequests to the executors were all substantially in the following form:

"I give and bequeath to my executors, hereinafter named, the sum of —— dollars, in trust, nevertheless, to pay the interest and income to A. B. for life, and at her decease to pay the principal to C. D.," etc.

The executors settled an account showing a balance for distribution sufficiently large to pay all the particular legacies and leave a residuary estate of about $77,000. This account was called for audit before FERGUSON, J., when the beneficiaries for life, under the bequests to the executors, asked the court to award to them interest from the death of the testatrix upon the respective sums so bequeathed. The auditing judge subsequently filed an adjudication awarding " to the several per-

sons named as cestuis que trust in the items of the will above recited, interest on the several sums named therein, from the time of the death of the testatrix," and reported a distribution accordingly.

Exceptions to the adjudication, filed by the executors, were dismissed after argument before the court in banc, opinion by ASHMAN, J.:

It is a fair subject for criticism that the only one of the exceptants who has a right to complain because the decree affects him as a residuary legatee, has been careful to object as an executor, in which capacity he is a mere stakeholder and has no standing whatever. But the question at issue will not be decided upon a technicality.

The testatrix gave separate sums to the executors, in trust to pay the income of each fund to its respective beneficiary for life. Did the gift include the income which accrued during the year commencing at the death of the testatrix? We think that it did, for the reason that it was a distinct gift of a yearly sum to the legatee, which is the definition of an annuity; and annuities, where the testator has not declared to the contrary, have always been exempted from the rule which postpones interest upon legacies until the end of a year from the death. The donee of a sum in gross receives all that the donor intended, when he is paid that sum at a time fixed for distribution; the donee of a yearly sum for life or a less term receives less, if one year is cut out from that period. In the one case, interest is a mere adjunct to the legacy, and may be withheld without impairing the substance of the gift; in the other, interest is itself the legacy, and must be paid in full, or the legacy will be diminished. Another point of difference is, that, as a rule, arrears of annuity will not carry interest. See cases in Theobald, 57.

The decision in this case must rest upon the distinction we have noted between the two classes of gifts, and not upon the accidental fact that the testator may have stood in loco parentis to the legatees, or that the gifts may have been intended by way of maintenance, of neither of which incidents we concede there is any indication in the will. The distinction is so far from being subtle, that it is entirely reasonable, and it has the additional merit of being easily applied. It relieves also against

the search for an obscure intention on the part of a testator.
The Supreme Court has recognized it in cases where an objec-
tion was present which does not appear in this instance. In
Penna. Co.'s App., Brown's Est., 41 Leg. Int. 26, the gift was
of $120,000 to trustees "as soon as the same can be conven-
iently raised and paid out of my estate by my executors, in trust
to pay and divide the income," etc. The fund was not in exis-
tence at the death of the testator, and the executors had one
year in which to pay it over to the trustees; yet the cestuis
que trust were held entitled to interest from the date of the
death. Here there is no such intermediary process, and no con-
sequent delay. Upon the strength of the ruling in that case,
and in the cases of Eyre v. Golding, 5 Binn. 472; Cooke v.
Meeker, 36 N. Y. 15; and Hilyard's Est., 5 W. & S. 30, to
which we simply refer, we dismiss the exceptions and confirm
the decree of the auditing judge.

Thereupon Clara W. Jordan, Anna M. Sparks and Thomas
W. Sparks, three of the residuary legatees took this appeal,
specifying that the court erred:

6. In dismissing the exceptions and awarding interest upon
the trust legacies from the death of the testatrix.

*Mr. John Douglass Brown, Jr.*, for the appellants:

1. The court was in error in supposing that income was
received by the executors upon the amount of the trust lega-
cies during the year following Mrs. Flickwir's death. This
was not claimed at the audit, and is not true in point of fact.
The account shows that within four months after her death the
executors commenced to dispose of securities and convert the
entire estate into cash. Undoubtedly something was realized
by way of income during the year, but no income accrued on
these trust legacies specifically. This is a material point, as in
Townsend's App., 106 Pa. 268, the fact that the specific secu-
rities appropriated to the trusts had borne interest during the
year, was given considerable weight. Cooke v. Meeker, 36
N. Y. 15, is authority for the decision in Townsend's Appeal,
but cannot be stretched to cover the present case, there being
here no direction to transfer securities, no securities transferred,
and no income which can in any way be associated with these
trust legacies.

2. These bequests are not gifts of annuities, and the law relating to annuities is not applicable. There is a difference between a bequest of money for the life of the legatee, and a bequest of a sum to be paid annually for life : Eyre v. Golding, 5 Binn. 472. The real question in the case is, whether, in the absence of a parental or quasi parental relationship between the testator and the beneficiary, and in the presence of a sufficient reason for creating a trust, entirely distinct from any purpose to secure to the beneficiary interest from the testator's death, appearing upon the face of the will, a legacy such as those involved in the present case, will be treated as an annuity during the year intervening between the death of the testator and the payment of the principal to the trustees, without the expression or implication of such an intention on the part of the testator.

3. Legacies are payable at the expiration of one year : § 51, act of February 24, 1834, P. L. 83; Woerner on Administration, § 454; and interest upon them is payable from that time, unless a different time is fixed by the will : Woerner on Administration, § 458. The exceptions to this general rule are : specific legacies; annuities; legacies of income of residuary estate for life; legacies to one toward whom the testator stood in loco parentis; legacies in lieu of dower; cases in which a different intention is expressed by the testator; and legacies for maintenance. Obviously the two last heads are the only ones with which we are concerned in this case. There could be no question that the law is as stated by Mr. Chief Justice TILGHMAN in Eyre v. Golding, supra, were it not for the later cases of Hilyard's Est., 5 W. & S. 30, and Penna. Co.'s App., 41 Leg. Int. 26. The former is not sustained by the cases on which the decision is rested in the opinion, as is pointed out in Steiner's Est., 13 Phila. 358. The report of the latter does not give the language of the will.

4. The old rule, under which the testator's intention is of controlling effect, does not seem to have been weakened by Hilyard's Estate and Penna. Co.'s Appeal, if we may judge from the decisions in Townsend's App., 106 Pa. 268, and Middleton's App., 103 Pa. 92. The use of the word " annual," or " yearly " in the will, would have converted the legacies into annuities, because manifesting such an intention : Eyre v.

Golding, 5 Binn. 472; Lynch's App., 12 W. N. 104. It is the omission of that word here, and of any indication of an intention to employ it, that we rest upon. The courts will not treat a legacy as an annuity unless an intention express or implied, specially to favor the legatee, is present. The court below expressly conceded, as a fact in this case, that there were no indications warranting the inference of such an intention on the part of the testatrix. Sufficient reasons for the creation of the trusts appear, part of them being separate use trusts, and the others being necessary to preserve remainders.

*Mr. Frederick J. Shoyer* and *Mr. H. S. P. Nichols*, for the appellees:

No error has been assigned to the finding that the estate was invested at the death of the testatrix in interest-bearing securities. It is therefore conceded that interest was earned, or should have been, and the question of the production of income does not arise in the case. The will as a whole shows the evident intent of the testatrix to provide for her relatives and those of her husband, and that the first takers should be the primary objects of her bounty. The residuary legatees were not such in any sense. By the terms of the various bequests, interest is payable upon these trust legacies from the date of her death: Eyre v. Golding, 5 Binn. 472; Spangler's Est., 9 W. & S. 135; Hilyard's Est., 5 W. & S. 30; Penna. Co.'s App., 41 Leg. Int. 26; Cooke v. Meeker, 36 N. Y. 15; Townsend's App., 106 Pa. 268; Bird's Est., 2 Pars. 168; Steiner's Est., 13 Phila. 358. The act of February 24, 1834, P. L. 83, making legacies payable in one year from the testator's death, does not apply to a bequest of income. The executors were themselves to hold the money for the benefit of the cestuis que trust, and there was no occasion for a payment over to trustees, as they already had in their hands funds, earning interest, applicable to the payment of the sums here claimed.

OPINION, MR. JUSTICE MITCHELL:

The act of February 24, 1834, § 51, P. L. 83, provides, that "legacies, if no time be limited for the payment thereof, shall in all cases be deemed to be due and payable at the expiration of one year from the death of the testator." As interest only

accrues by contract, or as damages for default of payment of money which is due, it followed that the deferring of the period of payment, also postponed the accrual of interest until a year from testator's death. This is therefore the general rule, and it was the well-settled rule of the common law, long prior to the date of the statute. It is, however, purely a rule of administrative convenience. It has no other merit. Certainly, to take an example from the case in hand, there is no inherent equity in mulcting the primary legatees of a solvent estate in a year's income, for the benefit of the residuaries, presumably the lowest in the scale of the testator's intended bounty. Being a rule of convenience only, it gives way at all times to the intent of the testator, whether express, as provided for in the statute itself, or implied from the general scheme of the will, or from particular expressions, or from the situation of the legatee, especially with reference to the testator. Certain exceptions, therefore, arising primarily from the testator's intent, have become as firmly established as the rule itself. The one with which we are specially concerned is the case of an annuity, or its practical equivalent, the interest of a sum of money. It is settled that an annuity, given as such, commences from the testator's death: Roper on Legacies, *877. In Gibson v. Bott, 7 Ves. Jr. 96, Lord ELDON said that that was certainly the rule, but he remembered when it was not clear. In the same case, he states that if a legacy is given for life, with remainder over, no interest is payable until the second year, and intimates that that is also the rule where a sum is given to be placed out to produce an annuity. On this authority, Roper lays down the rule that interest on a gross sum, given as an annuity, does not commence till a year after death. Roper, however, says there is no express decision to this effect, and Toller says the point is doubtful: Toller on Executors, 324.

This was the state of the authorities when the point came before this court, and the distinction intimated by Lord ELDON was repudiated. In Eyre v. Golding, 5 Binn. 472, the gift was to R. of "the interest of £400, to be paid her annually during her natural life." Chief Justice TILGHMAN held that interest was payable from the date of testator's death, saying: "The devise is not of a gross sum, but in the nature of an annuity. . . . . The first payment of the annuity must be made

at the end of the first year, or the intention of the testator is not complied with. You must count the time immediately from his death, or the legatee will not receive the annuity *annually* during her life." TILGHMAN laid much stress on the word "annually." But in Hilyard's Est., 5 W. & S. 30, the bequest was " in trust to place the same out at interest and pay the interest and income thereof, when and as the same shall be got in and received, unto my sister K., for and during all the term of her natural life." The word annually did not occur at all, and yet SERGEANT, J., says: "Between Eyre v. Golding and the case before us I perceive no difference. Interest is in its nature an annual profit; and a direction to pay interest makes it payable annually without anything further." After stating the general rule, he proceeds: " Where, however, it was not a bequest of the corpus, but of an income or annuity, there a contrary rule prevails, and the legatee of interest for life has been allowed it from the death of the testator." It will be observed that in this connection income and annuity are treated as synonymous by Justice SERGEANT, and by his reporters in their syllabus, just as interest payable annually, and annuity, had been treated by Chief Justice TILGHMAN and by Mr. Binney, in reporting Eyre v. Golding.

Hilyard's Estate was decided after full review of the English chancery authorities, and has been considered as settling the law. It was followed in Spangler's Est., 9 W. & S. 135, where GIBSON, C. J., says: " Where the corpus of the legacy is interest accruing on a residue after payment of debts, and not the residue itself, it is well settled that unless a contrary intent is collectible from the tenor of the will, the legatee is entitled to all that is made from the death of the testator." And in Pennsylvania Co.'s App., 41 Leg. Int. 26, the auditor held that there was no difference between income and annuity, and this court affirmed the decision in a per curiam opinion, although in this case, as in Hilyard's Estate, there were expressions in the will which might afford ground for argument that the testator's actual intent was to postpone the commencement of the interest for a period after his death.

These cases are authoritative on the present contention. But even if they were less so, they should be followed as consonant to sound reason. There is no substantial difference in

Syllabus.

legal aspect between the gift of an annuity for life, and of the interest or income of a fund for life; nor between the gift simply of interest, and of interest payable annually. Interest accrues de die in diem, but it is calculated at a rate per annum. In the popular understanding, it is chargeable annually and payable the same way, unless custom, or contract, or specific direction makes it payable at shorter intervals. The idea is so clearly implied, that the actual use or omission of the word annual in the will does not seriously affect the intent and purpose of the testator. To make distinctions, which depend, not on his intention, but on the skill of his draughtsman, is contrary to reason and sound law, and is not to be encouraged.

Decree affirmed at the cost of the appellants.