ANN E. MORRIS, JOHN W. CLYMER and ELIZABETH CLYMER his wife, WILLIAM S. MORRIS, JAMES H. MORRIS, ELIJAH MORRIS, MARY LAURA MORRIS and ANN ELIZA MORRIS, defendants below, appellants, v. JOHN W. WARREN, Executor of the last will and testament of ELIJAH M. MORRIS deceased, complainant below, Respondent.

A testator after directing in his will that all his debts and funeral expenses should be paid out of the first moneys which should come to the hands of his executor from any portion of his estate, real or personal, and that his personal estate should be sold at public auction, and that all the real estate of which he should die seized should be sold by his executor, bequeathed to his wife one-third part of his whole estate according to law, with the exception of her interest in two indentured servants and one bay mare thereinafter mentioned, bequeathed in succeeding clauses of it to three of his sons respectively, and after bequeathing to a married daughter two hundred dollars to be paid by his executor in semi-annual installments of ten dollars each, bequeathed to his four sons by name the balance of his whole estate after deducting the aforesaid legacies to be equally divided among them, the first of whom afterward died in the life time of the testator without having married. The testator died several years after the making of the will, but without revoking or altering it, leaving the wife, daughter and three of the four sons named in it, and two daughters born after the making of it, to survive him, without making by will or otherwise any provision for the two last mentioned children. The executor proceeded to sell, not only his personal, but also his real estate pursuant to the directions of the will, and the widow voluntarily joined with him in making and executing a deed for it to the purchaser. *Held* that the whole of his estate was thereby converted into personalty, and that the widow took as a legatee under the will the one equal third part of it after the payment of his debts and funeral expenses, with the exception of the three specific legacies to the three sons respectively before mentioned, according to the intestate law or statute of distributions; subject to abatement, however, as one of the legatees under the will, to contribute and make up the two shares of the post-testamentary children who were each entitled to one equal sixth part or share of the testator's estate, both real and personal, which must be raised and made up out of any intestate property real or personal of his, if any there be, or if there be a deficiency of such intestate estate, or no such intestate estate to make up the same, then whatever is required to make up such shares is to be contributed proportionably by all the devisees and legatees taking under

the will, out of the parts or shares of the estate devised or bequeathed to them respectively.

The rule for ascertaining the respective contributions required to be made for the purpose in the case, stated and prescribed by the court.

APPEAL from the decree of the Chancellor sitting in and for Kent County before Gilpin C. J. and Wootten, Houston and Wales, Associate Judges, on a bill filed by John W. Warren, executor of the last will and testament of Elijah M. Morris deceased, against the appellants, the widow and heirs at law of the deceased, stating that he was ready and willing to administer and distribute the residue of the testator's estate, but was in great doubt as to his duty under his last will and testament and the rights and interests of the parties claiming under it, and praying the directions of the Chancellor in the premises, and the answers of the defendants thereto.

The will was executed on the seventh day of December 1861, and duly probated on the twenty-fifth day of March 1868, the testator having died on the twenty-sixth day of February in the latter year, and was as follows, so far as it is necessary to state it: "2d. I direct that all my debts and funeral expenses be paid as soon after my decease as possible, out of the first moneys that shall come into the hands of my executors from any portion of my estate, real or personal. 3d. I direct that my personal estate be sold at public auction at the highest cash price in good and current money, but not upon credit, and that all the real estate of which I shall die seized or possessed, shall be sold by my executors for its reasonable value for like current money, but not upon credit, and to effectuate this my intention I do hereby vest in my executors full power and authority to dispose of my real estate in fee simple or otherwise in as full and large a manner in every respect, at I could myself do if living. 4th. I give and bequeath unto my beloved wife, Ann Elizabeth Morris, one-third part of my whole estate according to law, with the exception of her interest in two indentured servants and one bay mare hereinafter mentioned.

5th. I give and bequeath unto my beloved daughter Elizabeth, now the wife of John W. Clymer, the sum of two hundred dollars to be paid to her by my executors in installments, viz: ten dollars at the end of six months, until the aforesaid sum of two hundred dollars is exhausted. 6th. I give and bequeath unto my son, John S. Morris, one bay mare colt. 7th. I give and bequeath unto my son, William S. Morris, the unexpired term of the indentured servant, John W. Pratt (negro). 8th. I give and bequeath unto my son, James H. Morris, the unexpired term of the indentured servant, Alfred Pratt (negro). 9th. I give and bequeath unto my four sons, viz: John S. Morris, William S. Morris, James H. Morris and Elijah Morris, the balance of my whole estate after deducting the aforesaid legacies, to be equally divided among them. 10th. And I do hereby make, constitute and appoint John S. Morris and John W. Warren executors of this my last will and testament."

The bill then stated that John S. Morris died in the life time of the testator, and on the probate of the will, letters testamentary thereon were granted to the complainant, and that the real estate of the testator at the time of his death consisted of a farm of two hundred and forty acres in Murderkill hundred, and that he left to survive him a widow, Ann Elizabeth Morris, and six children, viz: William S. Morris, James H. Morris, Elizabeth Clymer, wife of John W. Clymer, Elijah Morris, Mary Laura Morris and Ann Eliza Morris. John S. Morris one of the sons named in the will having died without marrying in the life time of the testator, and the daughters Mary Laura Morris and Ann Eliza Morris having been born in the life time of the testator, but after the making of his will, who died without altering it, or otherwise making any provision for them; and that the son Elijah and the two daughters last mentioned were minors, aged respectively about ten, seven and four years at the time of filing the bill. That as executor he had sold the personal property of the testator and applied

the proceeds to the payment of his debts, funeral and other expenses, and that he had also sold the real estate of the testator and applied a part of the money arising therefrom to the payment of his debts, and that the said Ann Elizabeth Morris, his widow, joined with him in the making and execution of the deed therefor to the purchaser to perfect his title to it, but subject to and relying upon the decision of this Court of Chancery as to the effect of it upon her rights and interests under the will.    And that he was now ready and willing to administer and distribute the residue of his estate among the parties who might be entitled to the same under the will and according to law ; and that he was advised and believed that the said Elijah M. Morris died testate, but he had grave doubts as to his duty in the premises under the will and the rights and interests of the said widow, Ann Elizabeth Morris, and of his said daughter Elizabeth Clymer, legatee, and of the said William S., James H. and Elijah Morris surviving residuary legatees, and also of his said children Mary Laura and Ann Eliza Morris, born after the making of the will and in the life time of the testator ; and having a desire to close the concern of his executorship as soon as practicable, and by the advice of his counsel, to obtain the directions of his honor touching his duty and the rights and interests of the parties entitled to take under the will, or under and by virtue of the laws of this State, he prayed that the defendants might answer all and singular the premises, and that he might be directed by the court in what manner to proceed in order to the faithful execution of the will, and that the true construction of the same in relation to his duties as the executor of it, and the rights and interests of the parties affected by it, might be declared by the court.

Ann E. Morris, the widow of the testator, in her answer alleged that he died testate of all his property, real and personal ; that she did not know whether the complainant, as his executor, had applied any part of the proceeds of

the sale of his said real estate to the payment of his debts, except as it was stated in his bill of complaint; but that she did join with him in his deed for it to the purchaser thereof to perfect the title to the same, relying upon the decision of that Honorable Court as to her interest in the estate of her said husband under all the facts and circumstances of the case, and that she did so for the purpose of promoting the sale of it by him, at the highest and best price it would command, and with that view permitted him to insert in the advertisement of it for sale, that in case it should be decided by the Chancellor that she was entitled to one-third part of the whole estate, the purchaser should be entitled to hold during her life the one-third part of the proceeds of the said real estate so purchased by him upon his paying her the interest thereon annually; and that she had been advised by her counsel and, therefore, insisted that if his honor should consider that the devise to her in the will of the testator was in lieu and bar of her dower in his real estate, yet inasmuch as by so joining in the said deed for it, and thereby waiving her claim and right of dower to be assigned out of it, she became a purchaser for value of the devise or dispositions in her behalf in the will, and was, therefore, entitled absolutely by the terms and effect of the devise to one-third part of the whole estate of the testator irrespective of the debts against it, unless the remaining two-thirds of it should be insufficient to pay the debts, and then, and in that case only her legacy would be subject to be diminished to the extent of the deficiency merely. But if, on the contrary, his honor should consider that the said devise was not in lieu or bar of her dower out of the real estate of the testator, that then and in that case having consented to the sale of his real estate by his executor for the reason and purpose before stated, she was further advised by her counsel that she was entitled under the said devise, not only to the interest during her life on one-third part of the proceeds of the sale of it, less the expenses of making the same, but also to one-third part absolutely of whatever

balance of such proceeds there might be after the application of the said personal estate and such portion of such balance to the payment of the debts of the testator, as might be necessary to satisfy the same.   And in ascertaining what amount of money she was entitled to out of the whole estate of the testator, that she had a right to insist, and, therefore, she did insist that the personal estate of the testator should be considered and treated in that court as having been applied to the debts of the testator, according to the requirements of the statute in such case made and provided.   That by a proper construction of the will as made by courts of equity in similar cases, as the widow of the testator she was entitled to such a decision and disposition of it in her favor, as the devise to her in the will was not in lieu or bar of her dower in the real estate of the testator, but in addition thereto, as he had the power to make it so.   But if his Honor should not concur in either of the views of the case as therein before presented that still under the facts and circumstances which had been disclosed in it, she was entitled during her life to one-third part of the whole estate of the testator irrespective of the debts against it.

There was nothing special in the answers of the other defendants below, except that they all insisted on such right and interest in the estate and property therein devised and bequeathed to them respectively, as they should severally appear to be entitled to under the will of the testator.

By agreement of counsel filed in the suit, the testamentary accounts passed by the executor on the estate of the testator, the last on the 7th of July 1871, were made part of the case.

The Chancellor decreed that the devise to the widow was in lieu of dower in the real estate of the testator, and that she was put to her election between the benefits thereby bequeathed to her and her dower aforesaid, and as it appeared that she had voluntarily joined with the executor in a deed conveying all the real estate of the tes-

tator, except two small parcels which he had contracted to sell and convey before his death, and had thereby relinquished her dower in the same, it was considered and adjudged by him that she had thereby elected to accept the benefit bequeathed to her by his said will in lieu of her dower in his said real estate, that is to say, that she was entitled under the said bequest to one equal third part of the said testator's whole estate so as there shall remain assets of said estate after the payment of the debts of the said testator and the expenses of administration, such remaining assets being applicable to the satisfaction of her legacy in priority, before the other legacies, under the will, except as to the indentured servants and bay mare reserved out of the operation of the bequest to the said widow. And it further appearing from the testamentary accounts of said executor that the whole estate of the testator, including the net proceeds of his real estate together with the proceeds of his whole personal estate and his credits collected by his executor, amounted to the sum of $7007.97; and it appearing that after the payment of the debts of the testator and the expenses of administration, there remains in the hands of the said executor an unappropriated balance of $1849.12 with interest from the 9th day of July 1871, making the whole amount due this day from him, $1896.57, which sum is less than the one-third part of the said testator's estate so bequeathed to the said widow as aforesaid: it is therefore, considered and adjudged by the Chancellor that the said widow is entitled to receive the whole of said unappropriated balance in preference to the other legatees under said will subject to the allowances thereout hereinafter made, and subject also to the rights therein of the post-testamentary children of the said testator in the said bill named. And it further appearing to the Chancellor that Mary Laura Morris and Ann Eliza Morris, two of the children of the said testator parties defendant in this cause, were born after the making of said will, and that no provision by will or otherwise has been made for said children by the said testator, it is,

therefore, considered and adjudged by the Chancellor that the said Mary Laura and Ann Eliza are severally entitled to receive out of said unappropriated balance and its interest, subject to the allowances thereout hereinafter made, a part thereof equivalent in value to such share of said. testator's estate as they would have respectively been entitled to, had the said testator died intestate; that is to say, each of them to one equal sixth part of two equal third parts thereof, making for each of them one equal ninth part of said unappropriated balance and its interest. It is, therefore now ordered, adjudged and decreed by the Chancellor that the executor pay out of the said unappropriated balance and its interest the taxed costs in this cause ($163.16), also that he be allowed out of the same his counsel fees in the cause ($50), and it appearing that the balance remaining in his hands will be $1733.41, that he pay into this court for the use and benefit of the said Mary Laura and Ann Eliza respectively (they being under age and without guardians) the sum of $192.60, it being the one equal ninth part of said residue, and the balance thereof, to wit, the sum of $1348.21, he pay unto the said Ann E. Morris, widow of the said testator. From this decree the appeal was taken.

*Bates, Chancellor*, read his opinion delivered by him in the court below.

This is a bill for instructions touching the disposal, by the Executor of Elijah Morris deceased, of the unappropriated balance of the decedent's personal estate. The rights of the parties claiming an interest in the fund depend upon several questions, which have been argued at the bar.

First, is the question whether the testator's widow, Ann E. Morris, is entitled to claim both the legacy given to her by the will and her dower in the testator's lands—taking with respect to the dower, an equivalent interest in the proceeds of sale—the lands having been converted into money under the direction of the will and discharged of dower by reason of her joining in a deed to the purchaser.

This not being a case under our statute, touching the election by the widow between dower and a devise of real estate, it is governed by the general doctrine of election as administered in courts of equity. This doctrine precludes a party taking a benefit by deed or will from asserting any title or claim clearly inconsistent with the provisions of the instrument under which he takes—putting him to his election between the two. In its application to the case of dower it is nowhere better stated than by our Court of Appeals in *Kinsey vs. Woodward,* 3 *Harring.* 474. "In regard to dower," say the Court, " it seems from all the cases to be an established rule that a Court of Equity will not compel the widow to make her election unless it be shown by the express words of the testator that the devise or bequest was given in lieu of or satisfaction of dower ; or unless it appears that was the testator's intention by clear and manifest implication arising from the fact that the dower is plainly inconsistent with the devise or bequest, and so repugnant to the will as to defeat its provisions. If both claims can stand consistently together the widow is entitled to both although the claim under the will may be much greater in value than her dower." This statement of the rule is fully sustained by authority. *Benningham vs. Kirwam* 2 *S. & L.* 451. *Strahan vs. Sutton* 3 *Ves. Jr.* 249. *Gibson vs. Gibson* 1 *Dewy,* 421. 17 *Law & Eqy.,* 352. *Hall vs. Hill. De. & War.* 107. *Bending vs. Bending,* 3. *Kay & Johnson* 257. (*cited* 2 *Sto. Eq. In. sec.* 1088 *a*) *Adsit vs. Adsit,* 2 *Johns Ch. R.* 451.

Applying this rule to the present case I am of opinion that there is sufficient in this will to put the widow to her election. This conclusion is not drawn from the fact that the testator has directed his real estate to be sold and has given to his widow a share of the proceeds. These circumstances it is fully settled do not *per se* sufficiently demonstrate an intention to bar dower. *French vs. Davis,* 2 *Ves. Jr.* 572. *Ellis vs. Lewes,* 3 *Hare* 310. (25 *Eng. Ch. R.*) *Gibson vs. Gibson* 1 *Dewy* 42. 17 *Eng. Law & Eq. Wood vs. Wood,* 5 *Paige* 596. But the very terms of the bequest

made to the widow do upon a fair and reasonable construction import that this was to be the whole provision taken by her out of the testator's estate. The bequest runs thus : " I give and bequeath unto my beloved wife one third part *of my whole estate according to law*, with the exception of her interest in two indentured servants and one bay mare hereinafter mentioned." Now the obvious and common sense meaning of this clause is that the widow shall take of the whole estate, consisting of the proceeds of both real and personal estate converted into one fund, such proportion as she would have taken in his estate by law had the husband died intestate, to wit, one equal third part neither less nor more. One-third part "according to law," must mean that share or proportion, to wit, the one-third part which the law gives to the widow under an intestacy. It can bear no other sense. And as applied to what the testator terms "my whole estate," it must have contemplated his estate previous to any assignments of dower out of the lands. For a widow after taking dower has already her share, " according to law," of the lands, and as to that part of the testator's estate there remains nothing to which the terms of the bequest could apply. With respect to the residue remaining after an assignment of dower, the widow could take nothing "according to law," but only by way of testamentary gift over and above her share according to law ; and yet it is perfectly clear that nothing is here given but her share or third part " according to law." Whenever she has got that the bequest is satisfied. The whole purpose of this clause was to leave to the widow her exact proportion of the testator's estate under the intestate law and the statute of distributions modified as to the real estate by the direction for its conversion, the effect of which was to substitute for her dower out of the land an equivalent share of the proceeds, a modification of dower incidentally beneficial to the widow and a sufficient inducement for her acceptance of the bequest.

This phrase " according to law," although an inapt expression is not on that account to be rejected. In the

interpretation of wills all expressions however inartificial, are to be construed as helps toward ascertaining the testamentary intent. Such effect has been given to kindred expressions by our own Courts as in *Burton vs. Burton et al.*, 4 *Harring.* 38, and *Horsey vs. Horsey's Exrs.* 1 *Houston* 438. My conclusion is that the widow was at the testator's death put to an election between dower and the legacy, and her joining in the conveyance of the testator's real estate without any stipulated consideration for her right of dower must be taken as her election of the benefit given by the will.

This brings us to the second question, viz.: whether her share of the estate is subject to abatement with the other legacies for the payment of the debts, or is liable only for such deficiency as may remain after the other assets shall have been exhausted. Or to put the question in the form presented by this case—the debts having already been paid out of the general estate, is the widow entitled to the full satisfaction of her legacy out of the remaining assets before any part shall be applied to the other legacies? I am clearly of that opinion. In the first place, a widow is deemed a purchaser of a devise or bequest made to her in lieu of dower. The transaction has all the force of a contract between her and her husband. Consequently upon a deficiency of assets to pay both debts and legacies, a legacy to her in lieu of dower, does not abate with the other legacies, but is liable only for such deficiency as may remain after the other assets shall have been exhausted. Nor does it matter that the benefit given to her may exceed the value of the dower, for the testator is the judge for what price he will purchase the renunciation of her dower, and no legal injury can result to other devisees or legatees, they being mere volunteers from whom the testator might if he saw fit, devise away his whole estate. The authorities on this point are numerous and uniform. *Burridge v. Brady*, 1 *Pr. Wms.* 127. *Blower v. Merret*, 2 *Ves. Jr.* 420. *Dravenhill v. Fletcher*, *Amb.* 244. *Heath v. Danby*, 1 *Russ.* 543. *Norcott v. Gordon*, 14 *Simons* 258 (37 *Eng. Ch.*

*R*). *Loccock v. Clarkson*, 1 *Dessand* 471 ; *Stuart v. Carson*, 1 *Ib.* 500. *Isenhart v. Brown*, 1 *Eden* 461. *Williamson v. Williamson*, 6 *Paige* 298 : *Hubbard v. Hubbard*, 6. *Met.* 50. *Pollard v. Pollard*, 1 *Meen* 499; *Reed v. Reed*, 9 *Wal.* 263. *Lord v. Lord*, 23 *Conn.* 327. It is true that a testator may so charge a devise or bequest made to the widow as to make it liable to his debts and in such case she must take it so charged though made in lieu of dower, and must submit to an abatement with other devisees or legatees in case of a deficiency of assets ; and unquestionably the intention so to charge her devise or legacy may be implied. Accordingly it is argued that the bequest to this widow of one-third "according to law," is by this phrase subjected to all the incidents which would have attached to a distributive share of one-third taken by the widow under the statute of distributions, had there been an intestacy, and that among these incidents it is subject to an abatement for the payment of debts equally with other distributees. But this carries the force of the phrase "according to law" beyond the testator's real purpose. He meant by it simply to indicate his reason for designating one-third for her share under the will just as if he had said, "I give to my wife such proportion of my estate as she would take by law i. e. one-third", or "I give her one-third in lieu of dower." But I can read no intention that what he gave as a legacy in lieu of dower should be taken otherwise than subject to the real incidents attaching to such legacy, and among them to a preference against other legacies with respect to its liability for debts. The words "according to law" so far as they go to fix the proportion or to explain the testator's reason for it, have a natural sense, such as the testator of an inartificial will may be supposed to have comprehended; but these words must be severely strained to make them import into the will, the statute of distributions with all its legal consequences, converting the legacy in effect into a distributive share so as to dispossess the widow of the benefit of the rule applicable to a legacy given in lieu of dower. This is to read the bequest as if

54

the testator had said not "one-third part of my whole estate according to law," but "one-third &c. to be taken subject to all the same incidents as if it were taken under an intestacy." It is difficult to suppose that a testator could have employed words so simple and inartificial as those of this bequest with a view to legal consequences so technical.

But I now proceed to another distinct ground for exempting the widow's legacy from debts as between her and the residuary legatees. A residuary legatee has no right to call upon the particular legatees to abate. The whole personal estate not specifically bequeathed must be exhausted before these legatees can be obliged to contribute any thing out of their bequests. 1 *Roper on Legacies* 411. 2 *Redfield on Wills* 549.

The rule proceeds upon the clear principle that until both the debts and the legacies are paid there is no residue. The principle applies although the residuary clause makes no reference to the legacies, *a fortiori*, where, as in this case, the residue is expressly given "after deducting the aforesaid legacies," which are the bequest to the widow of one-third of the whole estate, the legacy of $200 to Mrs. Clymer and the specific bequests of the indentured servants and bay mare. An argument against the exemption of the widow from abatement with the residuary legatees was drawn from the use, both in the bequest to her and in the residuary bequest, of the same phrase "my whole estate," the bequest to the widow being of "one-third part of my whole estate" &c., and the residuary bequest being of "the balance of my whole estate." Showing as was argued, that in the contemplation of the testator these bequests were to attach to different parts of the same subject matter; that out of whatever funds the widow might take, the residuary legatees should also take, she taking one-third and they two-thirds. The effect of such a construction would be to divide between the widow and the residuary legatees the surplus after first paying the debts out of the whole, since otherwise as the estate has turned out, the widow

will take all and the residuary legatees nothing. The whole force of this argument lies in its treating the bequest to the widow and the residuary bequest as being in effect the division of a specific fund, as if a testator having an invested fund of $10,000 should give his widow one-third of it in lieu of dower and the remaining two-thirds to his four sons, and the question of abatement for debts were to arise between them. Now, in the first place, even were this such a case, it would be the fair and reasonable inference that the testator intended the legatees to take their respective portions of the fund subject to the different legal incidents attaching to each of those portions springing from their different relations to the testator,—the widow being a purchaser,—and the residuary legatees being volunteers. The testator would be presumed to understand this difference and in the absence of any expression to the contrary to intend it to operate. But in the next place, this is not the division of a specific fund, but only the ordinary case of a general residuary bequest after legacies previously given; and more than this, the residue is here given expressly subject to the prior payment of the legacies. First is a bequest to the widow of one-third of the estate, which has already been construed to mean the whole estate as held by the testator at his death subject to the direction for conversion and to the reservation of the indentured servants and bay mare. Then there is a bequest of $200 to Mrs. Clymer, and also of the servants and bay mare to other children of the testator. Then follows the residuary bequest in these words, " I give and bequeath unto my four sons &c., the balance of my whole estate after deducting the aforesaid legacies to be equally divided among them." The use here of the words " my whole estate " being the same words used in the bequest to the widow to whom he had given " one-third part of my whole estate &c.," is purely accidental and had no special significance. "The balance of my whole estate" means nothing different from the ordinary phrase "all the residue of my estate." This, then, is a bequest to the sons not of

any specific portion of the estate, say two-thirds ; as to the widow it was a gift of one-third, but it is a bequest of the general residue more or less, and that too, expressly, after deducting the prior legacies, to wit; the widow's third part of the whole estate, the legacy to Mrs. Clymer and the specific legacies.

I proceed now to apply the rule exempting the widow's share from abatement for debts. The effect is to give her the whole fund now before the court, subject to the right of the post-testamentary children which will be presently considered. The whole estate amounted say to $7722.33. One-third part of this sum, say $2574.11 was the widow's share in lieu of dower.

Of course the whole estate is subject first to debts and expenses of administration, as well against the widow as against the other legatees; but these being paid she is entitled next in priority to have the surplus applied toward satisfying her legacy. That will wholly absorb the unappropriated balance of $1829.02, leaving no assets for the other legacies, except the servants and bay mare which were expressly reserved for the specific legatees. Mrs. Clymer takes nothing, because she is a volunteer claiming against a purchaser ; and the four sons named in the residuary clause take nothing, both because they are volunteers and additionally because they are residuary legatees. There remains the third and last question, viz., what are the rights of the post-testamentary children, Mary Laura and Ann Eliza, what shares of the estate do they take, and how are their shares to be made up ?

The questions are answered by our statute for the benefit of children born after a will is made. *Rev. Code*, 274, *sec.* 12 *&c.* Under this statute such a child takes the same portion of its parent's estate both real and personal that he would have been entitled to, if such parent had died intestate. Elijah Morris left to survive him the widow and six children including the two post-testamentary children. Had he died intestate these two children would have been entitled each to one equal sixth part of the then balance of the

whole estate, subject to the widow's dower in the lands and to her third of the personal estate. This is the share to which the post-testamentary children are entitled. Then with respect to the mode of making it up for them, it is material in this case to observe that the statute in its pro- visions for making up a post-testamentary share of real estate does not disturb any titles vested under the will. It leaves all the dispositions of the will touching both real and personal estate in full force, charging the devisees and leg- atees with the contribution proportionably of such sums in money as may be required to make up the share of a post- testamentary child after applying to such share any intes- tate estate which there may happen to be. Hence the provision is that under certain proceedings to be taken in the Orphans' Court, the whole estate, real and personal shall be appraised with a view to ascertain the value of the entire post-testamentary share; then if there be any intestate real estate, that is to be allotted at a valuation subject to dower toward making up the share. Should such intestate real estate prove insufficient, then any intes- tate personal estate is to be applied. If there shall be no intestate estate, either real or personal, or if such as there may be shall still leave a deficiency in the share to be made up, then the direction of the statute is (p. 275, sec 19) that "the devisees and legatees taking under the will of the deceased parent shall proportionably contribute such sum or sums of money as added to the intestate estate, will be sufficient to raise the portion of such after-born child or children. No remedy for effecting the contribution among the devisees and legatees is provided; but the subject is left to the ordinary jurisdiction of the Court of Chancery which is quite adequate. It appears then that the policy of the statute is not to revoke the will, nor to create an intestacy in such sense as to give to the after-born children the same shares or interests *in specie* which they would have taken had no will been made. Its manifest purpose is to leave all the provisions of the will in full force, secur- ing for the after born children an equivalent in value for

the shares *in specie* of which they may have been deprived by the testator's dying testate. This principle of construction was applied to a statute of Pennsylvania not so clear in its provision as ours. *Coates vs. Hughes,* 3 *Binn.* 498. So, also to the New York statute—to which ours is similar. *Mitchell vs. Blain,* 5 *Paige* 588. This construction of the statute relieves the case of the embarrassment which otherwise would result from the conversion of the real estate under the direction of the will. For we may give full force and validity to this direction so as to leave the title of the purchaser unincumbered by the claim of these children, and deal with the proceeds of sale in estimating and making up the shares of the children as personal estate of the testator, precisely as if he had died leaving the money instead of the land.

We are now enabled to ascertain exactly the shares of the post-testamentary children and to decree how the shares shall be satisfied. The testator has left, after the payment of his debts and expenses of administration, a clear estate of $1849.02 which balance though resulting from a conversion of the real estate is to be treated as personal estate. The children take out of this balance such part as the statute of distributions would have given them under an intestacy, *i. e.* each, one-sixth of the surplus after deducting the one-third given by that statute to the widow, which is one-ninth part of the whole, making for each of the children $205.44, no occasion for abatement or for contribution between different legatees arises in this case as ordinarily is necessary where several legatees take an actual benefit under the will; because here the widow is the only legatee who takes any thing, except the specific legatees. But for the rights of the post-testamentary children, she would be entitled to the whole unappropriated balance. The adjustment is therefore fully made by deducting from the unappropriated balance of $1849.02, the shares of the two children, leaving the residue of it to the widow. There can be no doubt that under the statute this unappropriated balance,

though falling to the widow as a legacy in lieu of dower, is subject to contribute toward the share of a post-testamentary child. There is no distinction in this respect between specific, general and residuary legacies including a legacy given in lieu of dower, unless in the latter case a special equity as between the widow and post-testamentary child arises out of the fact that the latter has taken a share of the real estate discharged of ·dower in consequence of a legacy to the widow, in which case he will not be allowed additionally to claim a ratable proportion of the legacy given in lieu of the dower. *Mitchell vs. Blaine*, 5 *Paige* 590. Such an equity does not arise in this case. The result now arrived at disposes of a question raised in the argument as to the destination of a supposed lapsed share of John Morris under the residuary bequest in consequence of his dying after the date of the will and in his father's lifetime. Had there been a residue, after satisfying the widow's legacy, to pass to the residuary legatees, there would be a lapsed share in consequence of John's death, and the question would then have arisen whether such lapsed share should sink into the residue or result to the heirs at law as intestate estate, in which latter case that share would have been first applicable to the claim of the post-testamentary children, and the deficiency would have been apportioned between the widow's legacy and the residuary estate. But as the estate has turned out there is no residuary estate, and. consequently there is no lapsed share to be taken into consideration.

The result of the whole investigation is that the post-testamentary children, Mary Laura and Ann Eliza, are each entitled to one equal ninth part of the unappropriated balance in the hands of the executor, and that the widow, Ann E. Morris, is entitled to the residue. In this case there is no necessity to resort to the Orphans' Court under the provision of the statute. The statute contemplates the proceeding in the Orphans' Court only where there is real estate rendering a valuation necessary in

order to ascertain the amount of a post-testamentary share, and in some cases where there is intestate real estate, to allot a part of it or the whole toward making up the share. But where it is, as here, a simple question of abatement or of contribution for making up an ascertained sum to which a right attaches, the ordinary jurisdiction of a Court of Equity is adequate, and the adjustment may be made here. It will be observed that in making up the post-testamentary shares, I have taken no notice of the indentured servants and the bay mare. The widow is entitled to have the legatees of these contribute proportionably with her, but the value is small, and an interlocutary order would be necessary in order to ascertain it. I have presumed that the widow would waive this claim and let a decree be made irrespective of these small legacies; but if she insist upon this right, it must be conceded.

*Smithers*, for the appellants. He could show in a few words the difference of opinion between him and the Chancellor in relation to the construction of the devise to the wife of the testator. The court would not seek for such a construction of it as would have the effect to cut off and disinherit his heirs at law, the five children living and in being when the will was made, and expressly provided for as legatees in it. We all admitted that the sale under the will was a conversion of the estate out and out, and that the widow would take according to the statute of distributions; but he could not comprehend how he could rule, as he had done in his decree, that if the residue remaining after the payment of the testator's debts should amount to less, or no more, than one-third of his whole estate, she would take the whole of that residue, instead of one-third of it, which was the only point of difference between him and the Chancellor. The third clause of the will directed that all his personal estate should be sold at public auction at the highest cash price, and not on credit, and that all the

real estate of which he should die seized and possessed should also be sold for cash, and not upon credit, by his executor whom he clothed with full power and authority for that purpose. And that had to be done, and was in due time done by him. While the second clause of it directs that all his debts and funeral expenses should be paid as soon after his decease as possible, out of the first moneys that should come into the hands of his executors from any portion of his estate, real or personal. The 4th clause is as follows: " I give and bequeath unto my beloved wife, Ann Elizabeth Morris, one-third part of my whole estate according to law with the exception of her interest in two indentured servants and one bay mare, hereafter mentioned." In the 5th clause he gives and bequeaths to his daughter, Elizabeth, the wife of John W. Clymer, the sum of two hundred dollars to be paid to her by his executors in semi-annual installments of ten dollars each. In the 6th clause he gives and bequeaths to his son, John S. Morris, one bay mare colt. In the 7th clause he gives and bequeaths to his son, William S. Morris, the unexpired term of the indentured servant, John W. Pratt (negro). In the 8th clause he gives and bequeaths to his son, James H. Morris, the unexpired term of his indentured servant, Alfred Pratt (negro). And in the 9th clause he gives and bequeaths unto his four sons, viz: John S. Morris, William S. Morris, Jas. H. Morris and Elijah Morris, the balance of his whole estate, after deducting the aforesaid legacies, to be equally divided among them.

It is admitted on all sides that the effect of the will was to convert the real estate of the testator out and out, and that he must be considered as dying possessed of personalty only, so far as questions among his beneficiaries are concerned. No question could arise here as to whether the will presented a case of election, compelling the widow to choose between taking under the will, or taking her dower at law out of his real estate alone, because the Chancellor decreed that it was a case of elec-

tion, and there had been no appeal taken from that portion of his decree.  But she did not claim dower at law, on the contrary, she elected to take under the will, and, therefore, the question of election was not involved in the case before the Chancellor, although the opinion expressed by him in that respect was correct in itself, for by her acts she had elected to take under the will.  The proceeding before him was on behalf of the executor for instructions as to the disposition of the funds in his hands as executor, under the will, and if the widow had desired to present that question, she should have claimed dower *in specie* and also in her character as legatee under the will.  The birth of the post-testamentary children of the testator had no effect to revoke the power of sale conferred upon the executor, or to modify the operation of the doctrine of conversion.  *Rev. Code* 274.  *Coates v. Hughes,* 3 *Binn.* 498.

But what interest did the widow take under the will ? The estate so far as it was distributable by the executor, had been converted into personalty, and for the purposes of the will the testator had died possessed of personal estate only.  The second clause of it subjects his entire estate to the payment of his debts, irrespective of the question whether the monies applied were the proceeds of realty or personalty, thus blending them together and treating the whole as money ; and subject to his debts he disposes of the residue as declared in the succeeding clauses of it, and in the fourth clause he gives to his widow " one-third part of my whole estate according to law."  According to what law ?  Manifestly according to that law which regulates the distribution of the personal estates of persons dying intestate—that law which gives to the widow one-third of the personal estate remaining after the payment of the debts of the deceased husband.  There is no other law that gives her any part of the personalty, much less prescribes one-third as her portion of it, or according to which she is to have one-third of it, and, therefore, the testator must of necessity

had reference to that law when he used those words, for he could not have had reference to any other. *Burton v. Burton* 4 *Harr.* 38. *Horsey v. Horsey*, 1 *Houst.* 438. 14 *Ohio* 140. He does not simply say to have or take according to law, but his words are " one-third part according to law," which render his reference to that law as direct and certain as it could have been made without specifically naming it. The testator must, therefore, have referred to that law by the phrase " according to law," and *pro hac vice* incorporated that law in his will and directed the widow should take according to it. For some purposes, according to the reasoning of the Chancellor, he holds that she is to take according to the statute of distributions, but for other purposes, that she does not take according to it. But it is objected to this that the words of the testator are " one-third part of my whole estate according to law," and, therefore, this cannot mean residue, but means one-third of the original estate, subject only to his debts. And this is the view the Chancellor takes of it. But that construction would just as well give the widow one-third of the whole estate clear of his debts. There is no law, however, according to which that can be done. Besides, the language of the will itself precludes it, because the testator expressly directs that all his debts and funeral expenses shall be paid as soon as possible out of the first money that should come into the hands of his executor. But it is conceded that it does not give her one-third of the whole clear of his debts; and if so, then it must be equally admitted that it does not give her, after all, the one-third part of his whole estate, and that the words " my whole estate" must be controlled and qualified by the preceding direction in the will just before repeated, and by the express intention and declaration of the testator that she should take, not one-third part of his whole estate absolutely, but one-third part of his whole estate after the payment of all his debts and funeral expenses, or as limited and qualified by the words immediately added to them by

him, " according to law," that was to say, after the pay-
ment of his debts as before directed by him, according
to the statute of distributions, which he evidently and
must of necessity have meant and intended and referred
to when he added the words "according to law." And
as further and strong corroborative evidence to be found
in the will itself that he used the words "my whole es-
tate" with this qualification understood and clearly in-
tended by him, the same identical words are used again
by him in that same sense in the residuary or ninth
clause of the will in which he says, "I give and bequeath
to my four sons, viz : John S. Morris, William S. Morris,
James H. Morris and Elijah Morris, the balance of my
whole estate, after deducting the aforesaid legacies, to be
equally divided among them." But he does not say after
the payment of all his debts and funeral expenses and
"the aforesaid legacies" to be equally divided among
them, because he well knew that his preceding express
direction that his debts should be first paid before any
other disposition could be made of the assets of his es-
tate, was so clear and explicit that no one could misun-
derstand the words "the balance of my whole estate"
occuring in this connection, to mean any thing more or
any thing less than the balance of the whole of it after
the payment of his debts, as well as after deducting the
aforesaid legacies. The portion devised and bequeathed
to his widow was, therefore, to be the one equal third
part of the residue remaining after the payment of his
debts and the expenses of the administration of his es-
tate according to the express provision and direction of
the statute of distributions. *Ward on Leg.* 17 *Law Libr.*
32. *Bagwell v. Dry,* 1 *Pr. Wms.* 700. *Page v. Page,* 2
*Pr. Wms.* 489. *Mitchell v. Blaine,* 5 *Paige* 588. It was
hardly necessary to add that it was for the reasons
already assigned a case of election on the part of the
widow. He then submitted a statement in writing of
the plan on which he considered the shares of the post-
testamentary children should be arranged with the widow

and the other legatees named in the will, in the settle-
ment to be made with the parties by the executor.

*Comegys*, for the respondents. The testator intended
that his widow should have the one-third part of his
whole estate, and not one-third of the residue of it after
the payment of his debts, and if such was his wish and
desire, of course, he had the power so to will it; for it
was all his own to dispose of it as it suited his pleasure.
His children were but voluntary beneficiaries of his, and
took as legatees under his will by virtue of his bounty
merely, while the widow by virtue of her election took
her legacy under it, as a purchaser in lieu and satisfac-
tion of her dower at law in his real estate, to which she
was legally entitled on his death independent of his will
and pleasure, and without the power on his part, without
her consent, to debar her of it. The terms "the one-third
part of his whole estate according to law," were suscep-
tible in this case of the construction which the Chan-
cellor had given to them, and quite as much so, as the
construction which had been given to them on the other
side in the argument of the case below as well as here.
For inasmuch as he had previously directed in his will
all his property, real and personal, to be sold and con-
verted into money, the words of the testator that she
should take one-third of the whole of estate "according
to law," meant that she should take it, instead of for life
as an equivalent for her dower in his real estate merely,
as her own absolute property, as she would have taken
one-third of the residue of his personal estate merely
after the payment of his debts in addition to her dower
in his real estate, had he died intestate, that is to say, the
one-third of his whole estate so to be converted into
money, after the payment of his debts, as her own abso-
lute property, as she would have taken the one-third of
the residue of his personal estate in the other case, ac-
cording to the statute of distributions. As to the rela-
tive portion or quantity of his whole estate she was to

take under the terms of the bequest, it was unnecessary
for him to refer to the statute for determining his mean-
ing and intention, because he had already expressly
stated that by the words "one-third part of it," but to
make his meaning more certain as to the *quantum* of the
interest he intended to give her in that one-third part of it,
it was more proper and necessary and natural that he
should have referred to that statute, in order to indicate
that he intended it should be an absolute interest in it,
and not for the term of her life, as it was intended to be
in lieu and satisfaction of her dower in his real estate
which it was his desire to have sold and converted into
money.

The testator must be presumed to have known the
value of both his real and personal estate, and also ap-
proximately, at least, the amount of his indebtedness
when he wrote his will; and what inducement could he
have supposed that a bequest of one-third of the pro-
ceeds of the sale of both of them after the payment of
his debts, could afford his wife to elect to take under the
will, instead of her dower at law, particularly, as his
personal estate alone was not sufficient to pay his debts,
and a portion of the proceeds of his real estate had to be
applied to pay the deficiency? This case differs both
from the case of *Burton v. Burton* and the case of *Horsey
v. Horsey*, cited on the other side; for in the first of those
cases it was necessary to refer to the statute of distribu-
tions in order to ascertain what share or portion of his
real estate the testator intended to devise to his widow,
while in the latter the reference to the same statute be-
came necessary in order to determine, where the words
of the will were "after my just debts and funeral ex-
penses are paid, and my wife's thirds are taken out," the
testator proceeded to devise certain portions of his real
estate and certain pecuniary and specific legacies, and
also the residue of his real and personal property to his
two children, whether the words the "wife's thirds" in-
cluded one-third of his personal, as well as one-third of

his real estate, or in other words, whether the testator in using that phrase, had reference only to her dower in his real estate, or to both her dower in his real, and to the one-third of the residue of his personal estate to which she also would have been entitled under the statute of distributions in case he had died intestate; and in which the inquiry also was, as in the former case, to ascertain what share or portion of his entire estate the testator intended to give his widow when he employed such terms.    But in this case no such inquiry arises, because as he had before said, the testator in the present will had expressly bequeathed in so many words to his widow, the one-third part of his whole estate according to law.

The express exception in the fourth clause of the will, of the two indentured servants and the bay mare specifically bequeathed in subsequent clauses to his three sons mentioned in them, from the broad devise to his wife in that clause, also afforded a strong presumption that he intended to make no further exception or exemption from the operation of it, or otherwise he would have expressed it with equal clearness and certainty, following as it does in the same clause, and almost in the same line in which he bequeaths the one-third part of his whole estate to her. The court could not allow such vague and general words of reference, as the words " according to law " simply to control, limit, or restrict the natural import and legitimate meaning of the words " the one-third part of my whole estate," unless it finds that there is no other reasonable and probable way of ascertaining and determining the meaning and intention of the testator consistent with the other provisions and dispositions of the will.    And as another rule of testamentary construction, residuary legatees cannot in general, take anything, until all general and specific legacies have been paid and discharged.    A construction contrary to that for which he had contended, would work a great hardship to the widow in this case, for she never would have elected to take under the will, if she had not supposed and believed that she would take under it one-

third part of her husband's whole estate after its conversion as directed by him, with the exception of the two or three specific legacies before referred to and expressly reserved out of the whole of it in the bequest of the one-third of it to her.

*Smithers.* The widow did not take the share bequeathed to her in the will as a purchaser receiving it in consideration of, and in exchange for her dower, but she took it as a legatee just like any other legatee under the will.

*Wootten, J.,* announced the opinion of the Court.

It was conceded in the argument, that the sale of the real estate under the power and authority conferred upon the executor by the will, converted it into personalty, and therefore, the testator may be considered for the purposes of this case as having died leaving personal property only. It was also conceded that there was no question before this court as to the election of the widow, she having elected to take under the will by joining with the executor in the deed conveying the real estate sold under the directions of the will. The question of election, however, did not arise and was not necessary to be considered or decided, though the chancellor did decide it, the only question presented for the consideration of the chancellor and for this court being simply in reference to the distribution of the residue or unappropriated balance in the hands of the executor, and that seems to be narrowed down to the ascertainment of the share or proportion to which the widow is entitled, whether to one-third of the original or whole estate, or to one-third of the residue after the payment of his debts. It is not claimed or contended that the birth of the post-testamentary children had the effect to revoke the power of sale, or in any wise to change or modify the operation of law in reference to the conversion of the real property to personal, by the sale made in accordance with the directions of the will. By such sale

the real estate was unquestionably converted into personalty and the proceeds constituted part and so much of the personal property to be distributed by the executor as such. *Revised Code* 274. *Coates vs. Hughes*, 3 *Binney*, 498.

Having passed over and disposed of all other questions and those which have not been controverted or argued before us,I come to the consideration of the only matter which we are called upon to consider and decide, which is the share or proportion to which the widow is entitled under the will. It is insisted for her that she takes one-third of the whole or original estate, and on the other side it is said that she is only entitled to one-third of the residue after payment of debts. This question necessarily involves the construction of the will. By the third item the testator directs the payment of his debts out of the first money that shall come to the hands of his executors, whether it be the proceeds of the sale of the real estate, or personal property not of the proceeds of such sale.

By the fourth item he gives to his widow " one-third of my whole estate according to law," except the unexpired term of two indentured servants, and one bay mare. The testator's meaning as expressed by this clause of his will and the proper and legal construction of it, is the important question in this case and the hinges upon which it turns. Now what did he mean and what does his language indicate as his meaning? He evidently had in his mind and referred to some law which was to be the rule and measure by which his widow's one-third part of his whole estate was to be ascertained—could it be any other than the statute of distributions which gives a widow one-third of all the personal property of the husband who dies intestate after the payment of debts? If it was not this law to which the testator referred and which he intended to incorporate into his will and thereby make it the controlling principle and means for the ascertainment of his widow's share or proportion, what other could he, or can we apply in the determination of the question submitted to us? There is no other that he could have referred to,

and no other that can at all be applied to the case, and the conviction is, therefore, irresistibly conclusive that the reference is to the statute of distributions, thus indicating more clearly and explicitly the mode and the rule by which his widow's share or proportion should be ascertained. The law thus referred to by the testator becomes part of his will, and his estate must therefore, be distributed according to its provisions or his intentions will not, be effectuated. The principle here enunciated is recognized in the case of *Burton vs. Burton*, 4 *Harrington* 38 and that of *Horsey vs. Horsey*, 1 *Houston* 438.

This construction is made clearer and more conclusive by that clause in the will which excepts the widow's " *interest*" in the indentured servants and bay mare. There is no law of the State, except the intestate law or statute of distributions under which the widow would be entitled to any part of those articles, or to any portion of the proceeds of the sale of them, for except under this statute she would have no interest whatever in the excepted property.

By the words *"according to law,"* the testator meant the intestate law, that is the statute of distributions, and as that law gives the widow one-third of the residue of the personal estate after the payment of debts, it was necessary to except such articles as were not to constitute part of the estate of which she was to have one-third part. This exception being made by the testator, his widow is entitled to one-third of the residue after payment of debts and expenses of administration, subject however to modification and abatement, as she is one of the legatees of the will, in view of the shares of the post-testamentary children, who are entitled each to one equal sixth part or share of the testator's estate both real and personal. *Revised Code, chapter* 84, *section* 12 *p.* 274. And such shares or portions must be raised and made up first out of any intestate property of the deceased (if any,) real or personal, and the residue of such shares if there be a deficiency of such intestate estate to make up the same, or the whole of such shares or portions, if there be no such intestate estate,

is to be contributed proportionably by all the devisees and legatees taking under the will, out of the parts or shares of the estate devised or bequeathed to them respectively.

But it was said in the argument, and with a considerable degree of earnestness, that the testator declared that his widow should have " one-third part of his whole estate" and therefore could not have meant one-third of the residue, but one-third of the original estate—and this seems to have been the Chancellor's view of the testator's meaning and he so construed his language. We do not so understand and construe the words " whole estate." To give to them such unrestricted meaning would be to give to the widow one-third of the whole estate clear of debts, which is not claimed for her either by the argument or the decree of the chancellor. There is no law that gives to a widow one-third of her deceased husband's whole or original estate, provided so much remains after the payment of the debts and the expenses of administration, and the whole of the residue if it should be less than one-third of the original estate. But there is a law which entitles a widow to one-third of the residue remaining after the payment of debts. And that is doubtless the law to which the testator referred by the use of the words " according to law." He thus incorporated this statute in his will and made it part of it just as much as if he had inserted it in *haec verba*. This construction is maintainable as well by reason, as by adjudicated cases in our own courts. *Burton vs. Burton*, 4 *Harr*. 38. *Horsey vs. Horsey*, 1 *Houston* 438. Whilst in our judgment no other interpretation of the word is tenable or even plausible.

The testator evidently had in his mind and intended to indicate some law by which his widow's share or interest in his estate under his will should be ascertained, and there being but one which has any sort of reference to the distribution of the estates of deceased persons, which is the intestate law or statute of distributions, we are driven to the conclusion that he meant and referred to that statute. If this is the true interpretation of the words " my whole

estate" the testator did not mean the original estate, in reference to quantity, for that would not, in his language be " according to law" but contrary to it, and also to his expressed will. These words, "my whole estate," are desscriptive of the nature and character of the estate, and not indicative of the quantity, that is, they mean the proceeds of the sale of the real estate as well as the personalty, and it is in this sense that they were used and intended to be understood.

The testator used the same words in the ninth item of his will, which is the residuary clause, in such connection as to exclude the possibility of a doubt as to his meaning. He says, " I give and bequeath unto my four sons, viz: John S. Morris, William S. Morris, James H. Morris and Elijah Morris, the balance of 'my whole estate,' after deducting the ' aforesaid legacies,' to be equally divided among them." The balance of " my whole estate" after deducting " legacies," not debts. This cannot mean the whole original estate, but it is the residue remaining after the payment of the debts, that residue is what constitutes a man's estate and when we speak of our own, or another's estate, we mean that which remains clear for distribution after the payment of debts. Whatever is necessary for the payment of a deceased man's debts belongs to his creditors and cannot properly be considered any part of his estate for distribution and especially when we apply the act of distribution, for no matter how much property he may have in possession, if it is not more than sufficient to pay his debts, he has no distributive estate. This is true not only in a common sense view and as a matter of fact, but in legal contemplation. This being one view of the case we are of opinion that so much of the chancellor's decree as prescribes and directs the mode and proportions of the distribution of the unappropriated balance of the estate of Elijah M. Morris, in the hands of his executor, John W. Warren, ought to be reversed, and this is the unanimous judgment of the court.

We direct that the said John W. Warren, executor of

the said Elijah M. Morris, pay and distribute the unappropriated balance in his hands as follows . First, Out of the unappropriated balance remaining after the payment of the debts, and expenses of administration, he shall pay to the several persons entitled thereto the sum of two hundred and thirteen dollars and sixteen cents, the costs and expenses in the case ordered to be paid by the Chancellor, and that he pay the costs in this court. Second, That he distribute and pay the residue of said unappropriated balance as follows, viz : that he divide the said residue with the interest thereon into the following parts or allotments, viz : one-third part of the whole of said residue remaining after payment of the debts, expenses and costs as aforesaid—another of said parts, being the sum of two hundred dollars and the interest on the sum of ten dollars from the expiration of six months from the death of the testator, and on the further sum of ten dollars from and after the expiration of each and every succeeding six months thereafter, which shall have elapsed at the time of such division and distribution, and four other parts being each one-fourth of said two-thirds, remaining after the deduction of the said sum of two hundred dollars with interest as aforesaid : and that he pay to Mary Laura Morris and Ann Eliza Morris each one half of one of said fourth parts so remaining after the deduction of the said sum of two hundred dollars with interest on the said several sums of ten dollars respectively as aforesaid, the same being the share bequeathed to John S. Morris and which lapsed by reason of his death in the life time of the testator.

And that he further pay to the said Mary Laura Morris and Ann Eliza Morris severally and respectively from and out of the said one-third part of the said whole residue, and from the said sum of two hundred dollars with the interest on the installments as aforesaid, and from each of the remaining three-fourths of the said two-thirds, by way of proportionate abatement or deduction therefrom, such sum as together with the said one-half of

the said one-fourth above ordered to be paid to them will make up to each of them, the said Mary Laura Morris and Ann Eliza Morris, one-ninth part of the whole of said residuary balance remaining after the payment of the debts, expenses of administration and costs aforesaid. And that he pay to Ann Elizabeth Morris, widow of said testator, the residue of the one-third part of the residuary balance after deducting therefrom the sum necessary to constitute her proportional contribution therefrom to make up the shares of the post-testamentary children as aforesaid. And that he pay to Elizabeth W. Clymer, or to the said John W. Clymer in her right, the sum of two hundred dollars, with the interest on the installments aforesaid, less the amount necessary to constitute a proportional contribution therefrom to make up the shares of the said Mary Laura and Ann Eliza respectively as aforesaid, in the manner and at the times in that behalf provided in said last will and testament. And that he pay to William S. Morris, James H. Morris and Elijah Morris, severally and respectively the three-fourth parts of said two-thirds remaining after the deduction therefrom of the said sum of two hundred dollars aforesaid, with the interest on the several installments as aforesaid, to wit: one-fourth part thereof to each of them, less the several amounts necessary to constitute their several proportional contributions therefrom to make up the shares of the said Mary Laura and Ann Eliza respectively as aforesaid. And that the decree of the Chancellor so far as it decrees or directs any other or different distribution and payment of the said residuary balance by the said John W. Warren, executor as aforesaid, is hereby reversed.